And we'll turn to counsel in Guido v. Wells Fargo. Good morning judges of the court, may it please the court, my name is Charles Kennebecker, I represent Natal and Loretta Guido, I'd like to reserve two minutes please. There are two important issues before the court today. The first is what did Wells Fargo do and attempt to do, and the second is Guido's resultant causes of actions from that. The reason I have to address the first, what did Wells Fargo do and what did they try to do, is because Wells Fargo after this case initiated, take and said that the Guidos were effectively making it up, that they were confused, and they said that the Guidos argument that Wells Fargo sought to take their home is based on fiction. Well, let me ask you, if the foreclosure had gone through and had gone to sale, what would Wells Fargo have bought if it had bought the mortgage at the foreclosure sale, what would it have bought? What it would have taken was- Would have taken Mr. Umbria's interest, right? No, it would have taken the entire- Now, counsel, I think- Yes, sir. I've done a little New York law in my life, and I sent the other judges here, he was a co-tenant. He was a co-tenant, and a foreclosure on a co-tenant's interest is on only that co-tenant's interest. Right? Your Honor- So they would have owned Mr. Umbria's interest. That would have been correct had they done it correctly, sir. The problem is when we look at the complaint, the complaint does not name the Guidos just as a party in interest. Rather, when we look at the complaint, the complaint says that it is to take the foreclosed on the entire property, and the Guidos on the property. It did not say- Guidos don't own the entire property. They own a co-tenancy. Exactly, Your Honor. They're foreclosing on a- Well, go ahead, then. Your Honor- I have a hard time understanding how that complaint can reverse 300 years of New York law, but go ahead. It's not reversing it, sir. If Wells Fargo had taken the position and said, we're just naming the Guidos as a party in interest, but don't seek relief against them, that would have been fine. A poorly drafted complaint doesn't equal malice. No, but filing it, sir- Nor does it extinguish a co-tenancy. No, and it never had to. Right, and your clients persevered in the state court. They won. They did win because we had to bring a summary judgment. This wasn't nefarious on Wells Fargo's part. They named your people because they show up in the chain of title. No, Your Honor. Your Honor, when we look at the New York law, section 1311- I did a lot of foreclosures before I had the great honor of serving on the New York State Supreme Court, and I have to tell you, I would have named every single co-tenant that was there. Now, is that malpractice? It would not be malpractice. It would be wrong to the people who had a superior interest. The Guidos had no superior interest than Umbria, did they? Yes, they did. They did? They had- No, they had- Where in the record does it show that they had a superior interest? They had an interest- They came into title at the same time. Yes, sir. I went and looked at the public records. They came into title at the same time as Ms. Umbria. They have no superior interest. No, the reference, Your Honor, is not superior to Umbria. You used the word superior interest. Yes, I did. The Umbria's interest is superior to Wells Fargo's because Wells Fargo has a- from Umbria. But the Guido's interest is superior to Wells Fargo's claim. No, if they acquire Umbria's interest, then their interest is the same as the Guido's, and they would be subject to a partition action. Yes, Your Honor. Had- Had- Your Honor, you're doing it exactly the way that it should have been done. I represented a bank. And the way that you did it, sir, was correct. The problem when we look at the complaints, Your Honor, and we spelled this out at length, they looked to foreclose on the entire property, take the entire property, and keep the money. What portion of the property did Mr. Umbria own? Meats and pounds. What portion did he own? Mr. Umbria had a- He had an undivided one half. He did. And a partition action would decide whether it could be divided equally between the two if the bank had owned it, right? Your Honor, you're jumping to the point that when you did them, you did them correctly. And what they should have done is it should have been Wells Fargo versus Umbria and Guido to the extent that they're trying to take Umbria's interest. But instead, the complaint tried to take the Guido's interest as well. It- Okay. Go ahead. It- The complaint, Your Honor- I don't think it could have accomplished that because- But it- Whatever, Your Honor. When you look at the complaint, we spelled it out. I've looked at the complaint repeatedly. And, Your Honor, there's a section when we look at the wherefore clause, number three of the complaint. Wells Fargo said all we wanted was stuff from Umbria. But here's the thing. The wherefore clause had five sections. Take the property. Sell the house. Take all the money. That was from all the defendants. How many houses are on the property? There is one house and one other structure. One other structure? Right. Who lived in the house? The Guidos. Where was Mr. Umbria? His house was on the other section of the property. Oh, so Mr. Umbria had a house on the property. They were actually trailers. Is that the other structure you were talking about? It's a trailer. Okay. Okay. Google Maps are great. Okay. Your Honor, paragraph three of the wherefore clause. If, in fact, Wells Fargo had wanted only Umbria's interest, when we look at number three, they specifically say in number three, we want from the defendant, Umbria, a judge to pay the deficiency. Now, in section three, they've specified Umbria. They didn't specify Umbria number one, number two, number four, and number five. So your claim is for what? The claim is, Your Honor, for? Cause of action. Well, Your Honor, at this point, we had nine causes of action. Oh, you had nine, but you've only raised two here for us, right? There's the wrongful foreclosure, mental distress. They're all in there because we. The mental distress. Let's talk about that under New York law. It has to be outrageous conduct, right? It is, Your Honor. You say this is outrageous. I suggest to the court that trying to foreclose on people who have no mortgage with the lender is outrageous. Okay. I believe that would be true. What's your best case for that on a mortgage foreclosure context? Your Honor, what we have is that if we look at the judgment. Oh, simple question. What's your best case? Something I can read that'll support your view. Interestingly, Your Honor, there's not a case because in all the cases that are out there, there was a mortgagor and a mortgagee. The bank tried to foreclose on the mortgage. The cases were then based on the mortgagor saying the bank violated the terms, wrongfully foreclosed because they used the wrong terms of the mortgage. Here there was no mortgage by which Wells Fargo could ever foreclose on the guidos. And as a result, there are no cases like this one because it hasn't happened before. Naming the guidos alone was outrageous? Is that it? Naming the guidos in the context where they did not try to take their home would have been fine. But instead, Your Honor, when you look at the cause of action for relief, if I asked the court just to consider for a moment, if the guidos did not hire an attorney to defend them and a default had been entered, that default, if they had not answered this complaint and won summary judgment, that judgment that they sought would have taken the entire property, the guidos' interest. It would have sold the entire property, including guidos, and it would have taken all the money and given it to Wells Fargo, including the money that belonged to the guidos. The problem was they didn't do it right. They overreached and they tried to take the guidos' interest. And the question is whether that's outrageous in the context that New York will offer for potential infliction of emotional distress. Yes, sir. Very good. Thank you, Mr. Kennedy.  May it please the Court. Good morning, Your Honors. Cameron Grant from Hogan Loveless for the defendant, Appley, Wells Fargo Bank. The district court's judgment dismissing this case should be affirmed because the facts that have been alleged by the guidos don't give rise to ‑‑ Very poorly drafted foreclosure complaint, isn't it? Judge Wesley, I agree that it's an inartfully drafted foreclosure complaint. This is an example of the mortgage security crisis. You lend $185,000 to a co-tenant, you end up eating it because you don't even do the foreclosure as to the co-tenant. You ultimately cashed it in so the stockholders at Wells Fargo ate this $185,000, didn't they? That I don't know, Your Honor. It's not in the record. But you backed off on the foreclosure, didn't you? The foreclosure was eventually discontinued. And I was not counsel in the state court. Why anybody would loan $185,000 to a co-tenant is beyond me. But go ahead. It is an odd situation, and I think you're right, Judge Wesley, that had the foreclosure gone through, what would have happened is that Umbria's interest in the property would have been foreclosed and sold. And then whoever purchased that interest would have become a co-tenant with the guidos. And so it may be true that that means the mortgage is not worth very much, but that doesn't mean that the guidos have alleged a claim against Wells Fargo. And I agree, and the guidos counsel is correct, that there is at least maybe one sentence in the complaint, and it's that first part of the wherefore clause that says the defendant's interest will be foreclosed. But every other provision in the complaint in the position that Wells Fargo took in the litigation acknowledges that the guidos don't have a note in the mortgage. There's paragraphs 2 and 3 of the complaint which say that Umbria executed the note in the mortgage. There's paragraph 9b of the complaint that says that the guidos are named because they're record owners of the property. Paragraph 3, as guidos counsel mentioned, seeks an efficiency judgment against Umbria only, not the guidos. Then, to whatever extent there was any legitimate confusion about whether Wells Fargo was trying to take the guidos property, which it wasn't, that was clarified, and the State Supreme Court noted in its decision, plaintiff, meaning Wells Fargo in that case, acknowledges that the defendant's guido are not parties to the note and mortgage, and therefore are not personally responsible for the underlying debt, but are record owners of the premises securing the mortgage which required them to be joined as defendants in the instant action. The fact is, Wells Fargo never claimed that the guidos had a mortgage. Wells Fargo never sought to foreclose their interest in the property. There are two statutes pursuant to which what Wells Fargo did in this case was proper. Notwithstanding the fact that the guidos didn't have a mortgage with Wells Fargo, they were proper and necessary parties to the foreclosure action against Umbria pursuant to CPLR 1001, which says that a plaintiff is required to name as defendants persons who might be inequitably affected by a judgment in the action. Second statute is N.Y.R.P.A.P.L. 1311, which specifies necessary defendants in a foreclosure action. Subsection 1 says that a necessary defendant includes every person having an estate or interest in possession or otherwise in the property. Those statutes make a lot of sense in this context because if you consider what would have happened had the guidos not been named. They live on the property along with Umbria. They're co-tenants with Umbria. Had they not been named and then had Umbria's interest been foreclosed, then the result would have been that the guidos would have then been co-tenants in the property in which they reside with a complete stranger. So for that reason, it was not only necessary, but it was appropriate for them to be named for notice purposes. And then at the end of the day, as Judge Westleve recognized, the property was never foreclosed anyway. So they don't have any damages. If it was improper to name them, which it wasn't, then they did what they should have done. They retained counsel. They made a motion, and motion was granted. That situation that occurred is not a tort, and it's not a cause of action. So I think and I interpret counsel's position now to be kind of limited to two causes of action or at least two categories. The first is wrongful foreclosure. As Judge Broderick recognized in his decision, that has never been recognized as a cause of action by any New York court. No New York court has ever recognized this as a cause of action. But even if it were maybe a cause of action, it would require, first of all, an actual foreclosure, which didn't happen here. The action was discontinued. And then second of all, it would require some wrongful action by the plaintiff. It would have to be like a fraud on the court kind of idea. Exactly. I think some kind of fraud. The other example that was referenced in one of the decisions from 1956 said if the defendants had, if the borrowers had paid off the mortgage and the bank sought to foreclose anyway. So it would have to be something like that. It certainly wouldn't involve naming a record owner of the property for notice purposes. And then as to the emotional distress claims, again, Judge Broderick's decision was thorough, so I won't belabor the point, but intentional infliction of emotional distress would require extreme and outrageous conduct. I don't, Wells Fargo's actions in this case were not extreme and outrageous. In any event, that would require special injury, which the guidos haven't even alleged. Negligent infliction of emotional distress would require, first of all, a duty to the guidos, which there wasn't here. They had no relationship. And, again, their injuries in this case, to the extent there were any, they're not a direct result of the action but a consequential result. So the situation that the guidos found themselves in is not unsympathetic. If you accept the allegations and the complaint is true, they believed, rightly or wrongly, that Wells Fargo was attempting to take their property even though they knew they didn't have a mortgage. So that's not an unsympathetic position. But there are a lot of things that happen in life that can cause someone stress or apprehension that don't give rise to a cause of action. So the guidos did what they should have done. They retained an attorney. The action was eventually dismissed as to them. They were dismissed from the case. And then the entire action was discontinued altogether. So there is no cause of action. The judgment should be affirmed. Unless there are any questions, I'll rest. Thanks, Mr. Grant. Thank you. Anna Becker, we appreciate it. Thank you, Your Honor. Your Honor, very quickly, the complaint did not just name them nominally. And I ask the court when you consider this, if the guidos did not hire an attorney and defend this case, when you look at the ad daminum clause and you look at what Wells Fargo was looking for, you will see that had the guidos not defended and brought a summary judgment motion, they would have lost their home, the property would have been sold, and Wells Fargo would have kept the money. There is one thing between giving people notice about a proceeding. There's another one in affirmatively trying to take their property from them. And don't forget, in this case, we went to, as is all in the complaint, we went to there. We had court proceedings. We said we'll let them out. We released the claims against them. They said no. We had to file a summary judgment. They fought the summary judgment, Your Honor. They fought it. And all the summary judgment asked is let the guidos out of the claim. And they fought it. Now, why would they do that if all they wanted was notice? In this case, they should have been named only nominally. They should have been named as a party in interest. Instead, their own prayer for relief asked for the property to be sold and all the money to be paid to Wells Fargo. So when they sold the property and they took all the money. But it didn't happen. It didn't happen. It didn't happen only because the guidos stopped it. And, Your Honor, there is. The claim has to be that the allegations of it alone are enough to make the claim. And we had clauses of action in the complaint for wrongful use of civil proceedings, abuse of process. Because the guidos have. I'm sure all those require malice. No, they don't, Your Honor. Abuse of process? Not all of them do. Okay. We have, Your Honor, here people that had to hire an attorney to defend this. They're out the money for no reason. Mrs. Guido is a nice old lady. And she sat there literally wondering why and when she was going to lose her home. And she shouldn't have had to do that. The question is whether New York recognizes that she's entitled to a recovery. Your Honor, I just asked. That's what the question is, isn't it? That's what the question is, right? Your Honor, if you just look at the wherefore clause, what would have happened if the guidos did not defend this action? And you have your answer. Thank you very much. We'll reserve the decision.